USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/2/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GRANITE STATE INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA,

                        Plaintiffs,

-v-

GS PERFORMANCE, LLC

                        Defendant.

---

GS PERFORMANCE, LLC,

                        Counter Claimant,

-v-

GRANITE STATE INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA,

                        Counter Defendants.

---

23-cv-7646 (LJL)

OPINION AND ORDER

---

LEWIS J. LIMAN, United States District Judge:

    Plaintiffs Granite State Insurance Company ("Granite State") and National Union Fire Insurance Company of Pittsburgh, PA. ("National Union" and, together with Granite State, the "Insurers") move, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rules 55.1 and 55.2, for an order granting them default judgment against Defendant GS Performance, LLC ("GS" or "Defendant"). Dkt. No. 47.

    For the following reasons, the motion is granted.

## BACKGROUND

The Court assumes the truth of the well-pleaded allegations of the complaint on this motion for a default judgment. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

Granite State and National Union are insurance companies with principal places of business in New York, New York. Dkt. No. 1 ¶¶ 13–14. Defendant is a firearm retailer based in Tennessee. *Id.* ¶ 1. It was formed in 2019 and assumed the assets and liabilities of an entity named LMP/Mail Order Video Inc. d/b/a Glockstore ("LMP"). *Id.* ¶ 3.

Granite State issued the following Commercial General Liability ("CGL") insurance policies to LMP for the policy years October 7, 2013 to October 7, 2019: Policy No. 02-LX-019908162-00, effective October 7, 2013 to October 7, 2014; Policy No. 02-LX-019908162-01, effective October 7, 2014 to October 7, 2015; Policy No. 02-LX-019908162-02, effective October 7, 2015 to October 7, 2016; Policy No. 02-LX-019908162-03, effective October 7, 2016 to October 7, 2017; Policy No. 02-LX-019908162-04, effective October 7, 2017 to October 7, 2018; and Policy No. 02-LX-080837736-00, effective October 7, 2018 to October 7, 2019. *Id.* ¶¶ 3, 38.

National Union issued the following Commercial Umbrella Liability insurance policies to LMP for the policy years October 7, 2017 to October 7, 2019: Policy No. 29-UD-025005967-0, effective October 7, 2017 to October 7, 2018; and Policy No. 29-UD-080837737-0, effective October 7, 2018 to October 7, 2019. *Id.* ¶¶ 4, 38.

On June 29, 2022, the State of New York filed a complaint in New York State Supreme Court against various gun sellers including Defendant (the "New York Action"). *Id.* ¶ 20. The case was removed to the Southern District of New York in July of 2022. *Id.*; *New York v. Arm or Ally, LLC, et al.* No. 1:22-cv-06124-JMF (S.D.N.Y.). The New York Action alleges that the defendants' firearm frames and receivers are manufactured for easy conversion into untraceable

firearms ("ghost guns") and that the defendants directly sell the frames and receivers to consumers without following certain federal and New York State laws and regulations applicable to gun sales including failing to perform background checks, place serial numbers on the products, or enter the products into a federal database. Dkt. No. 1 ¶¶ 21–29. Judge Furman denied the motion to dismiss filed by nine of the ten defendants including GS. *New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310 (S.D.N.Y. 2024).[1] Those defendants moved for the court to certify an interlocutory appeal to the Second Circuit and the appeal was certified on May 20, 2024. *New York v. Arm or Ally, LLC*, 2024 WL 2270351, at *1 (S.D.N.Y. May 20, 2024). The Second Circuit's consideration of the appeal is presently being held in abeyance pending the Supreme Court's issuance of its decision in *Garland v. VanDerStok* (U.S. No. 23-852). *New York v. Arm or Ally, LLC, et al.* Nos. 24-773, 24-1497 (2d. Cir.)

On December 20 and 21, 2022, the cities of Buffalo and Rochester, New York, respectively filed similar lawsuits against various defendants including Defendant, alleging that the defendants knowingly sold and shipped unfinished frames and receivers into Buffalo and Rochester, respectively, in violation of state and federal law. Dkt. No. 1 ¶¶ 30–36; *City of Buffalo v. Smith & Wesson Brands, Inc. et al.*, No. 1:23-cv-00066-FPG (W.D.N.Y.) (the "Buffalo Action"); *City of Rochester v. Smith & Wesson Brands, Inc. et al.*, No. 6:23-cv-06061-FPG (W.D.N.Y.) (the "Rochester Action"). The New York Action, the Buffalo Action, and the Rochester Action are referred to collectively as the "Ghost Gun Lawsuits."

GS tendered the Ghost Gun Lawsuits to Granite State through its third-party claims agent Athens Program Insurance Services, LLC, demanding that Granite State pay for GS' defense

---

[1] The one defendant that did not join in the motion to dismiss was Indie Guns, LLC which was in default. *Id.* at 316 n.2.

3

expenses and indemnify GS for any settlement to which it agrees or any damages it is ordered to pay in the Ghost Gun Lawsuits. Dkt. No. 1 ¶ 39. Granite State denied GS' claims for coverage as to each of the Ghost Gun Lawsuits under the CGL Policies. *Id.* ¶ 40. Defendant has not tendered the Ghost Gun Lawsuits to National Union. *Id.* ¶ 41.

**PROCEDURAL HISTORY**

This action was commenced by complaint filed on August 29, 2023. Dkt. No. 1. Count I seeks a declaratory judgment that Granite State is not obligated to defend GS in the Ghost Gun Lawsuits. *Id.* ¶¶ 46–49. Count II seeks a declaratory judgment that Granite State is not obligated to indemnify GS in the Ghost Gun Lawsuits. *Id.* ¶¶ 50–53. Count III seeks a declaratory judgment that National Union is not obligated to defend GS in the Ghost Gun Lawsuits. *Id.* ¶¶ 53–58. Count IV seeks a declaratory judgment that National Union is not obligated to indemnify GS in the Ghost Gun Lawsuits. *Id.* ¶¶ 59–63.

On November 14, 2023, Defendant filed an answer, affirmative defenses, and a counterclaim. Dkt. No. 22.[2] Defendant's first counterclaim alleges that Granite State and National Union are liable for breach of contract for failing to pay for GS' defense of the Ghost Gun Lawsuits. Dkt. No. 22 ¶¶ 16–23. GS' second counterclaim seeks a declaratory judgment that the Insurers have duties to pay for GS' defense and to defend it in the Ghost Gun Lawsuits. *Id.* ¶¶ 24–29. GS' third counterclaim alleges the Insurers' bad faith failure to defend. *Id.* ¶¶ 30–33.

On March 1, 2024, the Insurers filed a motion, pursuant to Federal Rule of Civil Procedure 56, seeking an order granting it partial summary judgment on Counts I and III of their complaint and on Counts I and II of Defendant's counterclaim. Dkt. No. 30. The Insurers

---

[2] GS initially failed to timely answer the complaint, and the Insurers obtained a clerk's certificate of default on October 4, 2023. Dkt. No. 18. GS appeared on October 24, 2023, Dkt. No. 19, and moved without objection to vacate the clerk's certificate of default, Dkt. Nos. 19–20. The Court granted that motion on October 25, 2023. Dkt. No. 21.

accompanied their motion with a memorandum of law and a declaration of counsel in support of the motion and a Rule 56. 1 statement.  Dkt. Nos. 31–33.

On April 10, 2024, counsel for GS moved to withdraw based upon nonpayment of legal fees and lack of cooperation.  Dkt. No. 34.  The Court issued an order scheduling a hearing and directing that counsel for Defendant and a client representative of Defendant attend.  Dkt. No. 36.  The Court held that hearing on April 15, 2024, but, in violation of the Court order, no client representative of Defendant attended.  Dkt. No. 37.  The Court granted the motion to withdraw under Local Civil Rule 1.4, directed new counsel for Defendant to file a notice of appearance on the docket by April 29, 2024, and extended the time for Defendant to respond to the motion for summary judgment to May 27, 2024.  *Id.*  Subsequently, no counsel appeared for Defendant.  On May 30, 2024, the Insurers wrote the Court asking for leave to file the instant motion for a default judgment based on Defendant's failure to "otherwise defend" under Federal Rule of Civil Procedure 55(a).  Dkt. No. 38.  The Court directed the Insurers to file a motion for a default judgment by no later than June 7, 2024.  Dkt. No. 39.  The Court noted that the Insurers' motion for partial summary judgment would remain *sub judice* and would be denied as moot only if the Court granted the Insurers' motion for default judgment.  *Id.*

On June 4, 2024, the Clerk of Court issued a certificate of default as to GS based on GS' failure to defend, including by failing to retain counsel, and failing to submit an opposition to the Insurers' motion for partial summary judgment by May 27, 2024.  Dkt. No. 46.

On June 7, 2024, the Insurers filed this motion for a default judgment.  Dkt. No. 47.  The Insurers also filed a memorandum of law and a declaration of counsel in support of the motion as well as a proposed default judgment.  Dkt. Nos. 48–49, 51.  The motion was served on Defendant.  Dkt. No. 52.  Defendant has not responded.

On September 3, 2024, the Insurers submitted supplemental authority to the Court in the form of an opinion by the Honorable Lorna G. Schofield granting the Insurers' motion for partial summary judgment in *Granite State Ins. Co. v. Primary Arms, LLC*, No. 1:23-cv-07651-LGS (S.D.N.Y.).  Dkt. No. 53.

## DISCUSSION

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

The Insurers have satisfied the first step.  Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend*, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a) (emphasis added).  "[T]he 'typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer.'"  *Mickalis Pawn Shop, LLC*, 645 F.3d at 129 (quoting *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986)).  "Nonetheless, a district court is also empowered to enter a default against a defendant that has

failed to . . . 'otherwise defend.'" *Id.* (internal quotation marks and alteration omitted). The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'" *Id.* The Second Circuit held that where a limited partnership defendant "had willfully disregarded the district court's order that the defendant appear through counsel, the court was justified in imposing default." *Id.* at 130 (discussing *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305 (2d Cir. 1991)). "It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55." *Sec. & Exch. Comm'n v. Rsch. Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) (citations omitted); *see also Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (same).

As a limited liability company, Defendant "may appear in federal court only through a licensed attorney." *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007). The Court gave Defendant ample time to so appear after its initiate counsel withdrew. The Court directed Defendant to file a notice of appearance on the docket by April 29, 2024, and extended the time for it to respond to the motion for summary judgment. Dkt. No. 37. It also directed Defendant to appear through a representative at the conference where the motion to withdraw was granted. Dkt. No. 36. Defendant chose to disregard the order to appear at the April 15, 2024 telephonic conference and failed both to file a notice of appearance and to respond to the motion for summary judgment. It was served with the proposed clerk's certificate of default. Dkt. Nos. 44–45. It did not respond. It also was served with the motion for a default judgment. Dkt. No. 52. It did not respond to that motion. It has done nothing to defend this case since December 2023. "When a defendant has willfully disregarded the district court's order that the defendant appear through counsel, the court [i]s justified in imposing default." *Mattel, Inc. v. Auuisa Store, Inc.*, 2023 WL

7

3626183, at *1 (S.D.N.Y. May 24, 2023) (citation omitted); *see also Eagle Assocs. v. Bank Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) ("Having determined that the district court properly ordered Eagle to appear through counsel, it was appropriate to enter a default judgment when Eagle willfully disregarded the district court's order."); *Shapiro, Bernstein & Co. v. Cont'l Rec. Co.,* 386 F.2d 426, 427 (2d Cir. 1967) ("Without question, such cavalier disregard for a court order is a failure, under Rule 55(a), to 'otherwise defend as provided by these rules.'").

The Court turns to the second step. Although a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop, LLC*, 645 F.3d at 137 (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, the Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

The Insurers argue that they are entitled to a declaratory judgment that they do not owe a duty to defend or indemnify GS in the Ghost Guns Lawsuits. Dkt. No. 48 at 5. They contend, *inter alia*, that the Ghost Guns Lawsuits do not allege an "occurrence," as defined in the relevant

8

insurance policies, because the lawsuits do not charge GS with accidental conduct and do not seek recovery for "bodily injury" sustained during the relevant policy periods. Dkt. No. 1 ¶¶ 6–8.

The Granite State CGL policy provides, in pertinent part, that Granite State "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and that Granite State has the "right and duty to defend the insured against any 'suit' seeking those damages," but that it has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Dkt. No. 33-4 at ECF p. 53.[3] The policy goes on to provide that the insurance applies to "bodily injury" only if the bodily injury is "caused by an 'occurrence' that takes place in the 'coverage territory'" and occurs during the policy period. *Id.* Bodily injury is defined to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at ECF p. 65. Occurrence is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at ECF p. 67. The National Union Policies apply in excess of the Granite State Policies and, for all relevant purposes, have identical coverage grants. Dkt. No. 33-5

Considering the identical question under Texas law, the Honorable Lorna G. Schofield of this District held that Granite State had no duty to defend a firearms retailer in the Ghost Guns Lawsuit because the injuries alleged in those suits "were not caused by an 'occurrence' and therefore are not covered by the Policies." *Granite State Ins. Co. v. Primary Arms, LLC*, 2024 WL 4008167, at *4 (S.D.N.Y. Aug. 30, 2024). Judge Schofield found that under Texas law, a person's

---

[3] The quoted language is drawn from Policy No. 02-LX-080837736-00 which was submitted as an exemplar policy in support of the Insurers' motion for partial summary judgment. Dkt. No. 33 ¶ 6. The parties have agreed that the policy provisions within the exemplar Granite State and National Union policies provided do not materially differ from the provisions at issue in the other policies at issue. *Id.* ¶¶ 7, 13; Dkt. No. 31 at 4.

9

act is not an accident and therefore cannot be an "occurrence" "when (1) he commits an intentional act that (2) results in injuries that ordinarily follow from or could be reasonably anticipated from the intentional act." *Id.* at *3 (quoting *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 329 (5th Cir. 2023)). She concluded that the allegations in the Ghost Gun Lawsuits "make clear that Defendant's alleged conduct was not an 'accident' but instead comprised intentional acts that 'result[ed] in injuries that ordinarily follow from or could be reasonably anticipated' from that act." *Id.* (quoting *Discover Prop*, 73 F.4th at 329). Judge Schofield held "the Underlying Suits allege that Defendant took deliberate action to enable the anonymous acquisition of uncontrolled firearms with the predictable outcome of increasing gun violence" and that "Defendant's uncontrolled sales were not an 'accident' because their effect was alleged to be fully intended and expected and therefore not an 'accident.'" *Id.* at *4.

Judge Schofield's reasoning is persuasive. Although the Court in *Primary Arms* addressed the conduct of a firearms retailer other than GS and applied Texas law rather than the law of any other state that might apply to this case, those are distinctions without a difference. Judge Schofield did not rely upon allegations in the Ghost Gun Lawsuits unique to Primary Arms, LLC but on those that applied to all defendants. The law of Texas analyzed by Judge Schofield is not materially different from that of New York or Tennessee. *See, e.g.*, *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989) (holding that under New York law, coverage is precluded for non-accidental acts whether the insured intended the damages or "knew that the damages would flow directly and immediately from its intentional act" (citation omitted)); *Agoado Realty Corp. v. United Int'l Ins. Co.*, 733 N.E.2d 213, 215 (N.Y. 2000) (analyzing insurance contract that defined "occurrence" as an "accident" and holding that "in deciding whether a loss is the result of an accident, it must be determined, from the point of view of the

10

insured, whether the loss was unexpected, unusual and unforeseen" (emphasis omitted)); *State Farm Fire & Cas. Co. v. Bonetti*, 2012 WL 1252540, at *3–4 (W.D. Tenn. Apr. 13, 2012) (construing a CGL insurance policy that defined "occurrence" as an "accident" to exclude coverage for intentional acts that were not unforeseen by the policy holder under Tennessee law) (citing *Gassaway v. Travelers Ins. Co.*, 439 S.W.2d 605, 608–09 (Tenn. 1969)); *Am. Mod. Home Ins. Co. v. Daniel*, 2003 WL 21920939, at *7 (E.D. Tenn. June 30, 2003) ("An intentional act is not an 'accident' as the term is used in the standard insurance policy definition of 'occurrence.'").

## CONCLUSION

The Insurers' motion for default judgment is granted. The insurance policies at issue do not obligate Granite State Insurance Company or National Union Fire Insurance Company of Pittsburgh, PA, to defend or indemnify GS Performance, LLC in the Ghost Gun Lawsuits.

The Insurers' motion for partial summary judgment is denied as moot.

The Clerk of Court is respectfully directed to issue a default judgment consistent with this Opinion and Order and to close this case.

SO ORDERED.

Dated: January 2, 2025
New York, New York

LEWIS J. LIMAN
United States District Judge